# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

CAROLYN LOUISE GIBBS                                                                PLAINTIFF

V.                                             CIVIL ACTION NO. 1:13-CV-00085-SA-DAS

CORINTHIAN, INC.                                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff Carolyn Louise Gibbs, a black female, initiated this action, alleging that her employer Corinthian, Inc. violated Title VII of the Civil Rights Act by discriminating against her based on her race and gender. Corinthian filed a Motion for Summary Judgment [27]. Upon consideration of the motion, responses, rules, and authorities, the Court finds as follows:

*Facts and Procedural History*

Gibbs was employed as a furniture inspector with Corinthian in Booneville, Mississippi for two weeks in 2012. During that time, Gibbs contends that she was forced to endure various incidents of sexual harassment, including comments made by or in the presence of her supervisor Michael Lambert. After a workday in which Gibbs was allegedly subjected to two different offensive conversations with Lambert and another employee, she left work and did not return. Two days later, in response to her absence, Corinthian officially terminated Gibbs.

Shortly after her separation with Corinthian, Gibbs filed a charge with the Equal Employment Opportunity Commission ("EEOC"). She received her right-to-sue letter and filed this action, alleging race discrimination and various theories of sex-based discrimination. In response to Corinthian's Motion for Summary Judgment [27], Gibbs conceded her claim of race discrimination. Accordingly, the Court addresses Gibbs' allegations that Corinthian discriminated against her because of her sex.

*Summary Judgment Standard*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when there is no genuine dispute regarding any material fact so that the moving party is entitled to judgment as a matter of law. Summary judgment is required "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In determining whether a genuine dispute exists, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrated by the evidence. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). Rather, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). Importantly, when confronted with such conflicting evidence, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). After viewing the materials, if "there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts[,]" the Court must resolve it in favor of the nonmovant. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion and Analysis*

Gibbs pursues three separate theories of sex-based discrimination: hostile or abusive working environment, constructive discharge, and general gender discrimination. The Court addresses each in turn.

Hostile or Abusive Working Environment

Title VII extends civil liability to any employer who "fail[s] or refuse[s] to hire or . . . discharge[s] any individual, or otherwise . . . discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e—2(a)(1). The Fifth Circuit has explained that under Title VII, sexual harassment "that takes the form of a tangible employment action, such as . . . the creation of a hostile or abusive working environment" is prohibited. Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 162 (5th Cir. 2007).

To prove the existence of a hostile or abusive working environment, Gibbs must establish that:

> 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). For purposes of its summary judgment motion, Corinthian contests only the fourth element.[1]

For Gibbs to demonstrate that a term, condition, or privilege of employment was affected, she must show that the alleged harassment was "sufficiently severe or pervasive 'to alter the conditions of [her] employment and create an abusive working environment.'" Lauderdale, 512 F.3d at 163 (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 141 L. Ed.

---

[1] Notably, when it is the plaintiff's supervisor who perpetrates the alleged harassment, the plaintiff is excused from proving that the employer knew or should have known of the harassment and failed to take remedial action. Lauderdale, 512 F.3d at 162. In briefing this motion, neither party addresses this fifth element, treating the case as based purely on supervisorial conduct. Therefore, for summary judgment purposes, the final element is uncontested.

2d 662 (1988)). The Court may consider additional factors, such as "whether [the conduct] is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harvill v. Westward Comm'n, LLC, 433 F.3d 428, 434 (5th Cir. 2005)). As the Fifth Circuit has explained: "conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 330 (5th Cir. 2009) (quoting Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999)).

The Fifth Circuit has cautioned that the standard is stated in the disjunctive: a Title VII plaintiff may prevail by alleging severe *or* pervasive harassment. Harvill, 433 F.3d at 435. Therefore, "isolated incidents, if egregious, can alter the terms and conditions of employment." Id. Likewise, "[f]requent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists." Lauderdale, 512 F.3d at 163. The required showing of severity "varies inversely" with the required showing of pervasiveness. Id.

In Gibbs' deposition, she testified that the harassment began on her first day when Lambert introduced Gibbs to her male coworkers. She claims that she "got the impression that it was more than an introduction . . . like how do you guys like your new inspector?" Contributing to this feeling, Gibbs testified that a coworker identified as Tony told her that Lambert liked her and "wanted a piece of black booty." Additionally, Gibbs testified that her male coworkers often commented on other female employees' looks.

On her final day at Corinthian, Gibbs claims that in a conversation with coworker Victor Garcia and Lambert, Garcia directed her attention to another female employee and asked: "Do you like titties?" When Gibbs did not initially respond, Garcia and Lambert each allegedly

4

repeated the question, to which she asserts she finally answered "no." Garcia then allegedly expressed doubts about Gibbs' response, and asked her if she was telling the truth. Gibbs further testified that within an hour, Garcia allegedly asked her if she had ever been to a strip club and whether she liked women, again in the presence of Lambert. According to Gibbs, when she answered in the negative, Garcia acted disappointed, and expressed that he and Lambert "thought lesbians were hot." She asserts that Garcia later apologized to her and explained that he asked the questions at Lambert's behest.[2]

Also in support of her claim, Gibbs attached a signed yet undated declaration to her response to this motion in which she cites other instances of alleged harassment and duplicates contentions she makes in her deposition. For a declaration to be admissible, it must be "subscribed . . . as true under penalty of perjury, and *dated* . . . ." 28 U.S.C. § 1746 (emphasis added); see also McCann v. W.C. Pitts Const. Co., 2011 WL 3924855, at *6 (S.D. Miss. Sept. 7, 2011) (citing Bonds v. Cox, 20 F.3d 697, 702 (6th Cir. 1994) (holding that signed, but undated declarations must be excluded from consideration at summary judgment stage)). In ruling on a motion for summary judgment, courts may only consider materials "that would be admissible in evidence." Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012) (quoting FED. R. CIV. P. 56(c)(2)). Therefore, the Court will not consider statements made in Gibbs' undated declaration.

As to the evidence properly before the Court, Fifth Circuit precedent establishes a high threshold for a plaintiff to demonstrate severity. Indeed, that Court has failed to find a genuine issue of material fact as to severity when there was evidence that the plaintiff's supervisor grabbed her buttocks and made suggestive comments while she was in conversation with another

---

[2] Much of the alleged harassment is attributable to Gibbs' coworkers, not her supervisor Lambert. As noted above, with regard to coworker harassment, Gibbs is required to prove a fifth element on her claim, i.e., that Corinthian knew or should have known of the harassment and failed to take remedial action. Lauderdale, 512 F.3d at 162. The Court reiterates, however, that the fifth element is not contested for summary judgment purposes.

employee, Gibson v. Potter, 264 F. App'x 397, 400-10 (5th Cir. 2006), or when a coworker slapped the plaintiff on the buttocks with a newspaper, grabbed or brushed up against her breasts and buttocks, and attempted to kiss her. Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir. 2004). It has additionally held that plaintiffs were, as a matter of law, unable to establish the requisite severity when claiming that various inappropriate comments such as "your elbows are the same color as your nipples" and physical contact such as rubbing the plaintiff's arm were made in the workplace, Shepherd, 168 F.3d at 871-75,[3] or when alleging that a coworker made contact with the plaintiff's chest, touched her stomach and waist, and "rubbed his pelvic region across [her] hips and buttocks." Paul v. Northrop Grumman Ship Sys., 309 F. App'x 825, 826, 829 (5th Cir. 2009).

The Fifth Circuit has found sufficient evidence of severity only when faced with more egregious allegations. For example, the Court reversed a district court's decision to grant summary judgment when the plaintiff's coworker allegedly rubbed against her on a daily basis, simulated an act of sex with her, unbuttoned her blouse, and touched her breast. Taylor-Rogers v. Robb & Stucky, Ltd., 82 F. App'x 974, 975 (5th Cir. 2003). It likewise found sufficient evidence of severity and affirmed the jury's finding of a hostile or abusive working environment when a male supervisor allegedly hurled daily sex-based insults at the male plaintiff, humped the plaintiff over sixty times, showed the plaintiff his genitals roughly ten times, and indicated he would insert his genitals into the plaintiff's mouth. EEOC v. Boh Bros. Const., 731 F.3d 444, 456-60 (5th Cir. 2013). Most recently, the Fifth Circuit found an issue of fact as to severity when the plaintiff alleged certain "menacing acts," i.e., that twelve times over four days, several

---

[3] The Fifth Circuit has since criticized the panels in Shepherd and Hockman for failing to recognize that non-severe harassment can still be actionable if it is considered pervasive. Royal v. CCC & R Tres Arboles, LLC, 736 F.3d 396, 402-03 (5th Cir. 2013). Yet to the extent that the two opinions shed light on the question of severity, their reasoning remains intact.

maintenance men sniffed the plaintiff from above while she was sitting in a small office area. Royal v. CCC & R Tres Arboles, LLC, 736 F.3d 396, 403 (5th Cir. 2013).

Gibbs has not alleged that anyone attempted to make sexual contact with her or directly propositioned her for sexual activity. She identified no incident where someone simulated an act of sex with her or described an act of sex to her. Other than her assertions that her sexual orientation was questioned during two conversations, Gibbs has alleged no direct insults. Further, Gibbs did not allege physical contact, either of her private or non-private areas. See id. (noting that lack of physical contact, while not dispositive, is nonetheless a factor to consider). Nor did she point to any menacing non-physical conduct, such as the sniffing in Royal.

Thus, while no bright line rule has been established, using the factors listed above, along with the various factual scenarios from Fifth Circuit law, the Court finds that Gibbs' allegations—her initial introduction to coworkers by Lambert, the comments made by coworkers about other female employees, the comments made by Tony that indicated Lambert was interested in Gibbs, and the two conversations with Lambert and Garcia in which they questioned her sexual orientation—do not rise to the level of severity required to impose Title VII liability on Corinthian.

Indeed, aside from the two brief conversations with Lambert and Garcia, Gibbs introduced no evidence that she was obstructed from performing her duties at work. Though she testified that she subjectively felt unable to perform her job, a plaintiff is required to demonstrate that harassment was both subjectively and objectively severe. Stewart, 586 F.3d at 330 (internal quotation and citation omitted); see also Shepherd, 168 F.3d at 874 (finding the alleged conduct would not have "unreasonably interfere[d] with a *reasonable person's* work performance") (emphasis added).

Although the alleged conduct is not severe, harassment can still be actionable if it occurs so frequently as to be considered pervasive. Lauderdale, 512 F.3d at 163. As an example, twelve instances of sniffing over a compressed, four-day time period was held to create an issue of material fact as to pervasiveness in Royal. 736 F.3d at 401-02. Conversely, six sexual advances spanning one month were insufficient for a jury to find pervasiveness in Stewart. 586 F.3d at 330-31. Moreover, to demonstrate pervasiveness where, as here, there is an absence of severity, Fifth Circuit precedent requires a plaintiff to make a greater showing. See Paul, 309 F. App'x at 828 (explaining that even where the conduct involved physical touching, it "was held to be actionable under Title VII only in cases where it was chronic and frequent"); see also Lauderdale, 512 F.3d at 163 ("[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.")

The remarks allegedly made by Garcia and Lambert occurred during just two conversations in one day. See Nelson v. Lake Charles Stevedores, LLC, 2014 WL 204247, at *7 (W.D. La. Jan. 17, 2014) (holding that conduct occurring during a single workday was infrequent); see also Brandon v. Sage Corp., 2014 WL 6611987, at *9 (W.D. Tex. Nov. 19, 2014) (holding that comments were not pervasive when they occurred during a single isolated conversation). The remaining alleged comments appear to span a broader time frame, although their frequency is not clearly discernable from the record. For instance, Gibbs testified that male employees would often discuss female employees' looks, but she provided no specific instances. On the whole, especially when viewed in context of Gibbs' short tenure at Corinthian, the alleged conduct may not have been entirely infrequent. However, the Court determines that Gibbs' allegations do not amount to the level of pervasiveness required to support her claim, especially given the lack of severity involved.

While the conduct at issue may be offensive if true, the Court finds it insufficient to constitute a hostile or abusive working environment.

### Constructive Discharge

Gibbs next argues that she left her job at Corinthian in response to an unbearable working environment and was thus constructively discharged. To prove constructive discharge, a plaintiff must establish "that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (quoting Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir. 1997)). To make such a showing, a plaintiff must "demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." Harvill, 433 F.3d at 440 (quoting Landgraf v. USI Film Products, 968 F.2d 427, 429-30 (5th Cir. 1992)). As discussed above, the Court has determined that Gibbs has not established the requisite pervasiveness or severity to support her claim of hostile working environment. Therefore, the Court finds that she has likewise failed to make the greater showing necessary to establish a constructive discharge claim.

### General Gender Discrimination

In addition to her claims based on alleged sexual harassment, Gibbs seeks to prove gender discrimination with circumstantial evidence via the familiar McDonnell Douglas framework. To succeed by this method, Gibbs must first meet her prima facie burden by demonstrating that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

Fahim v. Marriott Hotel Servs., 551 F.3d 344, 350 (5th Cir. 2008) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)). For summary judgment purposes, Corinthian contests only the third and fourth elements.

Gibbs attempts to establish the third element—an adverse employment action—by reiterating that she was constructively discharged. The Court has already held, however, that the working conditions at Corinthian were not so intolerable to support her claim of constructive discharge. Therefore, this theory cannot support her prima facie case. Still, it is undisputed that two days after Gibbs left her job, Corinthian officially terminated her. Thus, the Court finds sufficient evidence of an adverse employment action to proceed to an analysis of the fourth element.

For purposes of this final element, Gibbs has produced no evidence with regard to her replacement or any similarly situated employees. Rather, Gibbs argues she is not required to establish the fourth element and that the Court should look to other evidence of discrimination, specifically the conversations with Garcia and Lambert in which they inquire whether she is interested in females and in attending strip clubs.

The Court recognizes that the McDonnell Douglas framework was "never intended to be rigid, mechanized, or ritualistic." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978)); see also Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) (citing Nieto v. L & H Packing Co., 108 F.3d 621, 624 n.7 (5th Cir. 1997)) (explaining that the Fifth Circuit has cautioned "district courts against applying the four-part, prima facie case test too mechanically"). Rather, the ultimate question is whether the employer's decision to terminate Plaintiff was a product of discriminatory intent. Byers, 209 F.3d at 427.

It is undisputed here that the employment decision at issue—Gibbs' termination—was made pursuant to Corinthian's absence policy, which Gibbs signed during her employee orientation. The policy mandates termination for employees who fail to appear at work or notify their supervisors for two consecutive days. Gibbs produced no evidence, direct or circumstantial,

that this particular employment action was motivated by improper discriminatory reasons. In fact, she makes no argument that her termination was discriminatory at all. She argues only that discrimination in the form of coworker and supervisor comments existed with respect to the alleged constructive discharge, a theory already dismissed by the Court.

Thus, the Court has been presented with no evidence that Gibbs was replaced by someone outside her class, that she was treated differently than similarly situated employees because of her gender, or that her termination was otherwise motivated by discriminatory reasons. Accordingly, her prima facie burden of proving gender discrimination within the McDonnell Douglas framework has not been met.

*Conclusion*

The Court finds that the conduct alleged by Gibbs fails to reach the requisite level of severity or pervasiveness to establish her sexual-harassment based claims of hostile or abusive working environment and constructive discharge. Likewise, Gibbs produced no evidence that her termination was otherwise a product of gender discrimination. For the foregoing reasons, Corinthian's Motion for Summary Judgment [27] is GRANTED. A separate order to that effect shall issue this day.

SO ORDERED, this 17th day of February, 2015.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**